Filed 8/6/26  Marriage of Kaur and Kumar CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re Marriage of JASNEET KAUR and GAURAV KUMAR. | |
| JASNEET KAUR, <br> Respondent, <br> v. <br> GAURAV KUMAR, <br> Appellant. | A172343 <br><br> (San Mateo County <br> Super. Ct. No. 22FAM00816B) |

Gaurav Kumar appeals from the trial court's issuance of a three-year domestic violence protective order against him and in favor of his estranged spouse, Jasneet Kaur, after the court held an evidentiary hearing on requests for a protective order from each party.  Focusing primarily on the court's refusal to allow him to present an expert witness, Kumar seeks vacatur and a remand for another hearing.  We reject his arguments as unpersuasive, largely because of deficiencies in the opening brief and record he has provided to this court.

Accordingly, we will affirm.

1

## I. BACKGROUND

The dueling requests for a restraining order in this case arose from an altercation between Kaur and Kumar at their San Mateo County home on Sunday, February 18, 2024.  At the time, Kaur and Kumar were separated and in the midst of divorce proceedings, but still living in the same house in order to jointly care for their two children.

Kumar apparently requested a restraining order first, in San Mateo County Superior Court on February 21, 2024.[1]  Kaur requested one two days later, on February 23, 2024.  The court commenced a long-cause hearing on these requests on November 5, 2024, with both parties represented by counsel.

At the beginning of the hearing, Kaur's counsel asked to be heard on a motion in limine she had just filed to exclude Kumar's trial brief, exhibits, and a nonparty witness as tardily provided to Kaur just the day before. Kumar's counsel identified this nonparty witness as someone he might call— "depending on the testimony"—as an expert on strangulation and its effects. The court, citing Kumar's tardiness, said it would not allow the potential witness to testify at that time.

The parties then presented their evidence.  Both parties testified about the incident that was the basis for their requests, each describing their recollections about a violent fight between them that occurred on a Sunday evening in their home in front of their children.

### A. *Kaur's Testimony and Related Evidence*

Kaur testified that Kumar started the fight.  She was sitting in a chair in a downstairs dining area of the house, adjacent to the kitchen, talking on

---

[1] Kaur's request is not in the record, but the court referred to it at the subsequent hearing on the two requests.

her cell phone with her sister, when Kaur came into the kitchen and began playing music loudly. He refused her request via her daughter (she did not want to talk to him directly) to turn the volume of the music down and blocked Kaur from turning it down, so she unplugged the speaker. He told her to go. She refused, telling him she had the right to be in the common area, and sat back down in her chair.

Kumar started playing the music again. Although he pushed her hands out of the way when she tried to lower the volume, she was able to unplug the speaker again. In the process, she noticed something fall. As she looked down to see what it was, Kumar took her cell phone, which she had left on a table, and ran to the stairs leading to the second floor of the house.

Kaur testified that she pursued Kumar, asking him to give her back her phone. He refused and started going through it against her wishes, which he had done before. When she tried to take her phone from him at the top of the stairs, he turned, pinned her to the wall and choked her for about five seconds. She was able to push him away and, as he put out his hand to keep her away, she started to bite his hand, not going "all the way," to get her phone, but he did not release it.

Kaur followed Kumar into the master bedroom. He struck her face with his hand and her glasses fell off. He wedged her against the wall, pressing on her with his body weight. She felt all physical strength drain from her and could not feel her legs; she started screaming for help and for someone to call the police. He was distracted by her screaming and she was able to grab her phone and her glasses and run out. She went outside and, scared and having a hard time breathing, called the police, who soon came to the scene and arrested Kaur. She testified at the hearing that she remained scared of Kumar.

Kaur further testified that she saw her doctor three days later, on February 21, 2024. Her counsel introduced into evidence an exhibit containing related documents and photos taken of Kaur at that visit, which also are not contained in the record. Kaur testified that the photos showed a redness on her wrist, an injury to her fingernail, and her neck. She also said she told the doctor about back pain she felt from Kumar wedging her against the wall.

Kaur's counsel played a portion of the recording of Kaur's 911 call to police for the court, which was also admitted into evidence. It also is not contained in the record.

Kaur also testified that Kumar had physically assaulted her on two prior occasions, one in 2014 and one in January 2024, and that in the latter occasion he put his hands around her throat for a moment and said he would " 'smash' " her. On another occasion, he bumped her new car with his car. She said there were also "a lot of verbal abuse incidents," including his multiple threats to shoot her and his talk, in front of their children, about buying a gun.

B. *Kumar's Testimony and Related Evidence*

Kumar testified that Kaur was the aggressor in their fight. He said that he went to the kitchen to prepare milk and cookies for the children, with whom it was his turn to spend time, and turned on some music, all of which was part of a ritual he did with them. He asked Kaur twice to make her phone call somewhere else and she did not respond.

Kaur then asked through their daughter that Kumar do something with the music. She stood up violently and yanked the speaker cord out, and he asked her to please take her call in her room. He plugged the music back in and Kaur stood up violently again and yanked the cord out, in doing so

4

scratching him with her nail.  She hit him on his hand and arm and then sat back down with a smirk on her face.

Kumar expressed dismay to Kaur and she did not respond.  He wanted to spend quality time with the children, so he took her phone from the table and walked away to go upstairs and put it in her room.  Kaur followed him and bear-hugged him on the stairs.  He ripped himself away and continued up the stairs.  As he turned at the top of the stairs, she grabbed him, pushed him towards a wall, and took off her glasses, which she did when she became aggressive.  He began recording video, aware something was going to happen.

Kaur became violent as Kumar tried to get away from her, and he did not even touch her.  He spoke calmly but she yelled at him to give back her phone, and then started to yell to call the police as she pinned him against the wall and hit him "like crazy."  She bit him and he "basically left the phone."  He identified photographs of where she clawed and scratched him, which are contained in the record.  He testified that Kaur "was the only one aggressive that night."

Kumar's counsel played a short video of a little over a minute long that was admitted into evidence and is contained in the record.  The video reveals a chaotic scene on an upper floor of the home from what appears to be Kumar's vantage point.  Screams and crying can be heard, but people are not always visible in the frame; a couple of times, Kaur can be seen briefly holding or being held by what looks like one of Kumar's hands (and holding her glasses the first time) and she yells, "Call the police" repeatedly, while Kumar says things like, "You hit me."  Kumar appears to be moving and there are glimpses of what looks like a bedroom at one point.  At the end of the video, Kaur gets away from Kumar and goes down the stairs, where each child is sitting in a different location.  Kumar holds up his hand to the

5

camera and says Kaur bit him. He then goes downstairs, where he films some foodstuffs that have fallen on what looks like the kitchen floor.

Kumar's counsel also played a few minutes of a longer body cam video of police interviewing Kaur on the night of the incident, and the video excerpt he played was admitted into evidence. The entirety of the video is in the appellate record. Because Kumar does not indicate which portion of the video was played, and because we cannot discern how much of the video was admitted into evidence, we will not summarize any portion of it here. Kumar's counsel used the video to contend there were inconsistencies between what Kaur told police about the incident and what she testified to at the hearing.

Kumar further testified that in April of 2024, Kaur pushed their daughter so badly that she fell on the ground and bruised her elbow. He said Kaur had an "abusive nature" and a quick temper, which caused him concern about her treatment of their children.

## C. *The Court's Ruling*

The trial court issued a restraining order on Kaur's behalf only, stating that it did not believe the evidence supported Kumar's side of the story. It cited several pieces of evidence in support of its conclusion that Kaur had met her evidentiary burden.

First, it referred to the video in which Kaur was screaming as showing "a struggle" and, second, it cited Kaur's 911 call to police. It found the two recordings showed that Kaur was "clearly in a state of distress."

Third, the court found that Kaur's medical records showed she went to the doctor the day after the incident, which supported the conclusion "that she went because she says she got choked. And if you look at the pictures, there is at least some red marks on her neck and some injuries . . . ."

6

Fourth, the court found Kaur's emotional upset while testifying was credible.

Fifth, it cited to "a history of issues" involving, if not physical abuse, at least emotional abuse. The court further noted that "[c]hoking is always a red flag."

The court, based on its review of all the evidence, rejected Kumar's contention that Kaur's actions and testimony were part of a strategy to use deceit in order to manipulate things "for a visa or for whatever the case may be." While it noted that some of Kaur's behavior "was concerning" and that she scratched Kumar, it found her actions were "more in self-defense" and that Kumar was the primary aggressor.

The court issued a restraining order of three years duration, included the children as protected parties, and ordered certain terms and conditions, such as that Kumar complete a 52-week batterer's prevention program. It ordered sole legal custody of the children to Kaur and a shared physical custody arrangement as long as Kumar participated in court-ordered programs, and also ordered visits and specified contact between him and the children.

Kumar filed a timely notice of appeal. He subsequently filed an opening brief, to which Kaur did not respond. He has attached to this opening brief a March 6, 2026 declaration by his attorney containing certain factual assertions about what occurred in the proceedings below, including a purported discussion in the court's chambers. His attorney has attached two exhibits to this declaration—a minute order of the court dated November 5, 2024 and a resume for Ann M. Rovner, MSN, BSN, RN, whom, according to his declaration, was the expert witness Kumar intended to call at the hearing.

## II. DISCUSSION

Kumar makes three arguments seeking vacatur and a remand for further proceedings in which his expert witness may testify about strangulation and its effects.

First, he contends the trial court abused its discretion by refusing to allow his expert witness to testify in violation of Family Code section 6301, subdivision (d)[2] and other statutory provisions that favor the admission of all relevant evidence. He argues the expert testimony was relevant because the credibility of Kaur's testimony that he choked her was at the center of the dispute.

Second, according to Kumar, the trial court should have identified the local rule it relied on in refusing to admit his expert witness as not timely disclosed. He argues that the court erred because local rules did not require prior disclosure of rebuttal witnesses and the Evidence Code and his substantive due process rights supersede generalized local rules.

Third, Kumar contends no substantial evidence could exist to support the court's finding that Kumar was the primary aggressor if his expert on strangulation had testified.

As we will explain, none of these arguments is persuasive.

### A. *The Proceedings Below*

As noted above, at the beginning of the long-cause hearing, Kaur's counsel asked to be heard on a motion in limine, while Kumar's counsel indicated that he "potentially may have another witness depending on the scheduling of it, but I don't anticipate that at this time."

---

[2] Section 6301, subdivision (d) mandates that the trial court consider the totality of circumstances in determining whether to grant or deny a petition for a domestic violence restraining order.

8

Kaur's counsel then explained that she had filed a motion to exclude Kumar's trial brief, trial exhibits, and a nonparty witness apparently referred to in the trial brief because Kumar had not provided any of the materials or information until the day before, in violation of "San Mateo County local rule 5.F5 and California Rule of Court 5.394(b)." Further, she contended, the brief did not include certain required information about the nonparty witness.

When the court asked Kumar's counsel who was the nonparty witness, counsel responded, "We may have potentially, depending on the testimony, is an expert. So it's not a percipient witness." Asked what the expert would testify about, counsel said, "Strangulation and the effects thereof," at which time the court interrupted and confirmed that Kumar's counsel did not provide a witness list until the day before.

There was then a discussion about the trial brief and exhibits. Kumar's counsel indicated he had substituted in just 30 days before, though he agreed with the court that it was not an excuse for his tardiness, especially since he saw the disclosure requirement in the local rules. At the end of the discussion, the court said it was "going to have to defer on some of it," though it agreed that "it is untimely." The court also said it had not read Kumar's trial brief.

The court then added, "With respect to the witness, I am not allowing expert witness to testify at this time." Kumar's counsel responded, "Fair enough." The court continued, "You folks didn't provide that. I don't believe the time was set for such request and you should be following the local rules even if you subbed in at the last minute. That is what you should have known before taking on the case." Kumar's counsel responded, "Absolutely."

**B.** *General Legal Standards*

Under the Family Code, a court may issue an order enjoining a party from contacting another party, coming within a specific distance, or

9

disturbing that person's peace and, in the discretion of the court, on a showing of good cause, of other named family or household members. (Fam. Code, §§ 6320, subd. (a), 6340, subd. (a)(1).) The court shall not issue a mutual order enjoining parties from specific acts of abuse described in Family Code section 6320 unless, among other things, the court finds that *both* parties acted as a primary aggressor and that neither party acted primarily in self-defense. (Fam. Code, § 6305, subd. (a)(2).)

"We review a trial court's rulings on the admissibility of evidence for abuse of discretion. [Citation.] Expert testimony must be based upon the facts shown by the evidence and may not be based ' " 'on assumptions of fact without evidentiary support' " ' or ' " 'on speculative or conjectural factors.' " ' " (*People v. Hin* (2025) 17 Cal.5th 401, 484.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Under the standard, " '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*Camacho v. Superior Court* (2023) 15 Cal.5th 354, 383.)

Furthermore, in reviewing a court's evidentiary rulings for abuse of discretion, "[w]e review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date." (*People v. Welch* (1999) 20 Cal.4th 701, 739.) Also, "we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." (*People v. Geier* (2007) 41 Cal.4th 555, 582.)

To the extent a court abuses its discretion in excluding expert testimony, the appellant must also show prejudice, i.e., that it was

"reasonably probable that a result more favorable to [appellant] would have been reached in the absence of the erroneous exclusion." (*People v. Sanders* (1995) 11 Cal.4th 475, 510 [prejudice evaluated under the state standard established in *People v. Watson* (1956) 46 Cal.2d 818, 836].) It is a "well-established rule of appellate review that a judgment or order is presumed correct and the appellant has the burden of demonstrating prejudicial error." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

C. *Analysis*

Kumar's arguments are fatally flawed by his mischaracterization of the record, lack of citations to it and to relevant legal authority, reliance on factual contentions not before the trial court at the time of its ruling, and failure to provide a full record to this court. His deficient arguments, citations, and presentation of the record and evidence fail in the face of several fundamental principles of appellate review.

These principles require that Kumar, as the appellant, persuade this court it is necessary that we vacate the court's order and remand this matter for rehearing. " '[A]n order is presumed correct; all intendments are indulged in to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1046.) " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "We must 'view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence.' " (*People v. Carpenter*, at p. 1046.)

Accordingly, "[t]he burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless

11

there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 566.) In other words, the appellant "has the burden of persuasion; '[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.) "The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684.)

Related to these basic precepts, it is an appellant's burden "to provide an adequate record to assess error." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141; *id.* at pp. 1140–1141.) " '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502, citing *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

"[I]f," as Kumar contends, " 'some particular issue of fact is not sustained,' " he has the obligation as appellant " 'to set forth in [his] brief *all* the material evidence on the point and *not merely [his] own evidence.*' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) The violation of this settled principle of appellate practice forecloses the assertion of error pertaining to the incompletely summarized issue of fact. (See *ibid*.: *Asahi Kasei Pharma Corp. v. Actelion Ltd.* (2013) 222 Cal.App.4th 945, 951, fn. 3; *Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.*

12

(2002) 102 Cal.App.4th 765, 782; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1509–1510.)

## 1. The Court Did Not Make a Final Ruling on Kumar's Expert Witness

Kumar's abuse of discretion argument is premised on a mischaracterization of the record. He contends the trial court erred in excluding his expert witness, at least as a rebuttal witness. But as our review of the proceedings demonstrates, when asked by the court to explain his nonparty witness, Kumar's counsel stated only that he "may have potentially, depending on the testimony, . . . an expert" on "[s]trangulation and the effects thereof." In other words, counsel neither indicated that he was in fact calling such a witness, made a meaningful proffer as to the relevance or content of the witness's testimony, nor actually said he might call the witness *in rebuttal*. Counsel also attempted no further proffer even after the trial court said it had not read the trial brief counsel apparently filed just the day before—which is not in the record.[3]

Accordingly, the court's ruling was far from final. The court simply stated: "I am not allowing expert witness to *testify at this time*." (Italics added.) In other words, the court, faced with a skeletal proffer of only a potential expert witness that Kumar had not yet decided to call, left the door open for Kumar's counsel to, if and when he decided to call the expert, make

---

[3] Under the circumstances, with no indication in the record that the court knew much if anything about the case or potential testimony, counsel's statement that he might present his witness "depending on the testimony" was not so clear as to signal he would call the witness in rebuttal. Because he did not sufficiently raise the issue below, Kumar's contention that he is not required to disclose a rebuttal witness before trial under Code of Civil Procedure section 843, subdivision (d) is of no relevance to the merits of his appeal.

an appropriate motion and proffer.  Counsel never did so.  Kumar offers no reason, and we see no reason, why the court abused its discretion under these circumstances.[4]

## 2. Even Assuming the Court's Ruling Was Final, Kumar's Inadequate Presentation Does Not Show an Abuse of Discretion

The trial court said it was not allowing Kumar's expert witness to testify at that time because Kumar had not disclosed the witness to Kaur until the day before, apparently in a trial brief that is not contained in the record.  Even if, solely for the sake of argument, we construe the court's decision as a final ruling, Kumar provides too meager a legal argument and too incomplete a record to persuade us that the trial court abused its discretion.

Specifically, Kumar contends, based on Family Code section 6301, subdivision (d),[5] other statutory provisions, certain case law, and fundamental due process that the trial court was required to allow his expert witness to testify because of the relevance of that testimony.  This argument does not convince us of error—any court conducting an evidentiary hearing must consider all of the relevant evidence that has been properly admitted in the course of reaching a decision.  That does *not* mean that a party may call any witness it would like without abiding by the rules and procedures that apply to the disclosure and admission of such evidence.

---

[4] We would likely conclude that Kumar has forfeited his claim by his failure to make such a follow-up motion and proffer below if Kaur had raised it.  However, she has not responded to Kumar's brief.

[5] Section 6301, subdivision (d) states in relevant part, "The court shall consider the totality of the circumstances in determining whether to grant or deny a petition for relief."

14

Kumar faults the trial court for ruling he was tardy without identifying the local rules applicable to its conclusion, quotes a local rule that he presumes the court relied on, and argues that rule does not apply. He ignores what the record actually shows occurred—in discussing Kaur's in limine motion, all of the parties were aware of and discussed a specific local rule. Moreover, Kumar does not present the rule to us for our consideration.

The court's ruling concerned Kaur's motion in limine to exclude the expert witness that Kumar apparently identified in his trial brief filed the day before (which, again, is not in the record). Kaur filed a written motion that also is not contained in the record and which likely cited the local rules; indeed, at the hearing, Kaur's counsel referred to a specific local rule ("5.F5") that Kumar does not provide to this court despite briefly purporting to interpret it in his opening brief. And Kumar's counsel below (who is also Kumar's appellate counsel) told the court that he had seen a local rule (which he also does not identify or quote) that did not excuse his tardiness merely because he had recently substituted in as counsel. Only after this discussion did the court refer to Kumar's tardy disclosure under the local rules.

We reject Kumar's argument for four related reasons.

First, Kumar's complaint that the trial court failed to identify any local rule justifying the exclusion of his expert runs contrary to the generally applicable principle that trial court rulings need not be accompanied by reasons. (See *Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1188.) There are some exceptions (e.g., Code Civ. Proc. § 632 [statement of decision following bench trial]; *id*., § 657 [grant of new trial on grounds of insufficiency of the evidence]; *id*., § 581c [grant of nonsuit]); cf. *Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388, 399 [on appeal from

denial of class certification appellate court reviews only the reasons given by the trial court]), but evidentiary rulings are not among them.

Second, Kumar's failure to provide a complete record forecloses review of the trial court's ruling excluding his expert.  At the time the court ruled it is obvious that all parties and the court were focused on a disclosure rule, which appears to have been cited by Kaur's counsel at the hearing ("5.F5").  Even now, however, Kumar does not provide the text of this rule, and he fails to provide this court with any of the San Mateo County Superior Court local rules as they existed in November 2024 when the court ruled, such as by a request for judicial notice (see Evid. Code, §§ 452, subd. (e), 459; Cal. Rules of Court, rule 8.252.)  Whether it is cast in terms of forfeiture or failure to bear the appellate burden of demonstrating error on appeal, this record deficiency supplies an independent reason to reject Kumar's claim of abuse of discretion.

Third, we evaluate the court's ruling, not the reasons for its ruling, and we may affirm on any ground if the ruling is correct.  (*People v. Geier*, *supra*, 41 Cal.4th at p. 582.)  At the hearing, Kumar's counsel said the expert witness was identified in the trial brief, and Kaur's counsel argued as an independent reason to exclude the witness that this identification, besides being late, was inadequate.  This, too, supplies an independent reason to reject Kumar's abuse of discretion claim.

Fourth, Kumar has not included key documents in the record, such as Kaur's in limine motion or Kumar's trial brief.  He therefore has not met his burden of providing an adequate record for this court to determine the merits of his claim.  This is another independent reason to reject his claim.  (*Gee v. American Realty & Construction, Inc.*, *supra*, 99 Cal.App.4th at p. 1416; *Hernandez v. California Hospital Medical Center*, *supra*, 78 Cal.App.4th at p. 502; *Maria P. v. Riles*, *supra*, 43 Cal.3d at pp. 1295–1296.)

### 3. Kumar Does Not Establish He Was Prejudiced by Any Abuse of Discretion

Finally, Kumar contends that there could not be substantial evidence to support the court's determination that he was the primary aggressor if his expert witness's testimony on strangulation had been introduced. This is a poorly conceived argument because the record does not disclose what the expert would have said. It also appears in effect to argue the trial court's purported abuse of discretion was prejudicial. It fails for multiple reasons.

First, Kumar states in his opening brief that his expert witness "would establish that any choking—especially the choking described by [Kaur]—would have left serious marks and contusions on her neck; but, none were present." But Kumar does not cite to anything *in the record* showing what the substance of his expert's testimony would have been, thereby failing to show the basis for his substantial evidence/prejudice argument.

Kumar also fails in his obligation to summarize all of the substantial evidence presented by Kaur in the light most favorable to the court's ruling. (See *Foreman & Clark v. Fallon, supra*, 3 Cal.3d at p. 881 [given that a party must demonstrate there is no substantial evidence to support the challenged findings, "[a] recitation of only defendants' evidence" is not sufficient].)

It is apparent—particularly given the absence of any meaningful proffer about what the expert witness would say—that the testimony and evidence presented by Kaur, which the trial court found credible and some of which we have summarized in the background section *ante*, is substantial evidence that supports the trial court's finding that Kumar was the principal aggressor. (See *Swan v. Hatchett* (2023) 92 Cal.App.5th 1206, 1215 ["on substantial evidence review we generally do not second-guess the trial court's assessment of the credibility of witnesses or documentary evidence"].) For these reasons alone, Kumar's argument is unpersuasive.

Further, the trial court cited multiple exhibits in support of its conclusion. These include Kaur's 911 call to police and her medical records, which apparently contain a photograph the court said showed some red marks on Kaur's neck and some injuries. However, Kumar neglects to include these exhibits in the record (although he does provide us with two other exhibits that he apparently believes support his position). It is Kumar's burden as appellant to provide us with a sufficient record to evaluate prejudice; in the absence of an adequate record we must presume the court's ruling is correct. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.*, *supra*, 203 Cal.App.4th at p. 348; *Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1140–1141; *Gee v. American Realty & Construction, Inc.*, *supra*, 99 Cal.App.4th at p. 1416; *Hernandez v. California Hospital Medical Center*, *supra*, 78 Cal.App.4th at p. 502.) This is a second, independent reason for our rejection of his substantial evidence/prejudice claim.

## III. DISPOSITION

The order appealed from is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

18